**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                             Case No.: 17-23693-LMI

Greenway, LLC,                              Chapter 11

            Debtor.

_____/

### INTERESTED PARTY GARY DOEHLA'S OBJECTION AND OPPOSITION RESPONSE TO FIRST AND FINAL FEE APPLICATION OF THE ASSOCIATES [ECF 95], MOTION TO STRIKE, AND MOTION TO DISGORGE

Interested party Gary Doehla ("Doehla"), through undersigned counsel, files this Objection and Opposition Response to First and Final Fee Application of The Associates (the "Fee Application") [ECF 95], Motion to Strike, and Motion to Disgorge. The First and Final Fee Application of The Associates as Attorneys for The Debtor and Debtor-In-Possession (the "Fee Application") [ECF 95] produced by David Lloyd Merrill ("Merrill") is insufficient, deficient, and impermissible for a wide variety of reasons. The Fee Application is akin to a self-serving unsworn affidavit. For these reasons, the Court should strike it from the record in its entirety, and the Court should fashion an appropriate remedy in this seemingly unique and disappointing situation. The Court should order the return of all funds paid by Doehla to Merrill in this case, or in the alternative, fashion an appropriate award of fees to Merrill, resulting in a substantial amount owed from Merrill to Doehla.

### Brief Procedural Background

Doehla is the manager of the Debtor Greenway, LLC who signed the chapter 11 petition [ECF 1]. At the time of filing, the Debtor was represented by attorney Tomas A. Pila [ECF 1, 2]. Mr. Pila's representation in this case was terminated on January 23, 2018, and Merrill took over

1

as counsel for the Debtor [ECF 20].  Merrill was paid directly by Doehla for his services: a $25,000 retainer fee and an additional $5,000 in cash. *See* Exhibit 1, Affidavit of Gary Doehla.[1]  On August 9, 2018, Merrill was formally employed via order [ECF 33] which stated in pertinent part that Merrill was retained on a *general retainer* pursuant to 11 U.S.C. §§ 327 and 330.  Furthermore, "[a]ny references to the retainer agreement stating '**being earned upon receipt**', needing to be 'replenished' or that invoices will automatically be charged against the retainer are **deemed stricken and are of no force and effect**." (Emphasis added). [ECF 33, p.2].  This case proceeded until May 13, 2019 with minimal legal work ever done, and this Court entered its Order Dismissing Case upon the Motion to Dismiss of the United States Trustee [ECF 78].  Notably, this Court retained jurisdiction to hear and adjudicate any issues, if any, at the request of the United States Trustee, with regard to fees received by Debtor's counsel in this matter.  [ECF 78, ¶ 4].[2]

Undersigned counsel was retained by Doehla to recoup the $30,000 (previously believed to only be $25,000) in legal fees already paid to Merrill in this case.  On August 17, 2020, undersigned counsel communicated with Merrill regarding the fees paid in this case.  What has subsequently happened lends zero credence to the current Fee Application at hand.  Merrill was unable to produce any original billing from the case, if that original billing and time records ever existed.[3]  Accordingly, undersigned counsel was forced to file the Motion to Reopen and Motion for an Accounting [ECF 82] on August 31, 2020. Merrill responded and objected [ECF 86], but this Court reopened this case on September 17, 2020 [ECF 88] and directed Merrill to file his fee application [ECF 91], which is currently before the Court.

---

[1] The Affidavit of Gary Doehla also includes a copy of the Retainer Agreement (as Exhibit A to that affidavit) signed by both Merrill and Doehla, which is referenced as the "Retainer Agreement" throughout this filing.
[2] *See also* Transcript, ECF 80, 6:18-22.
[3] Doehla denies having ever received any "periodic, hourly, progress, or other itemized billing from David Merrill on any case, until he recently submitted the [Fee Application]."  [Exhibit 1, ¶10].  The Fee Application states in its first paragraph that "[t]he Associates have not attached any prior billing from dates prior to the date of this Motion and intends that the fee requested will be for services rendered from December 7, 2017, through October 25, 2020."

## Relevant Timeline

A timeline of relevant events to give a clear picture at this juncture is an important frame of reference through which the Court should view the Fee Application.  While this timeline is slightly arduous, it is absolutely necessary to review because of the highly unusual, unorthodox, and impermissible methods and procedures that Merrill used to lead us to the absurd position we are in today, with Merrill claiming that he is owed $36,898.00 for work done *in this case*, and not acknowledging *any* amount already paid by Doehla.  A review of what happened makes it rather obvious what unfortunately occurred here:

**First** – On December 8, 2017, Doehla and Merrill sign the Retainer Agreement, which indicates that Merrill will represent the Debtor here and take limited action in a state court case in Volusia County, Florida.  These actions occur: Merrill does take over representation of the Debtor here, and also files a Motion to Set Aside Final Judgment as Void Ab Initio, in *Webster v. Doehla*, in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, Case No: 2014 31160 CICI.  *See* Exhibit 2, the Motion filed by Merrill in that case ("Merrill's State Court Motion"), with attached transcript from a hearing in this Court omitted.  That Motion was filed on December 21, 2017,[4] and Merrill failed to set the motion for hearing until March 2, 2018.  The day before the hearing set for April 5, 2018, opposing counsel filed its response in opposition, and on April 5, 2018, the court entered an order denying Merrill's State Court Motion and cancelling the hearing. [*See* Exhibit 3].  That Order notes, among other things, that "[t]here is nothing within that transcript which relieves counsel's obligations to produce legal authority in support of their position, make a specific prayer for relief, or even setting this motion for hearing.  The transcript is simply not enough, and this Court's obligations are not delegable."  The Court denied the ill-

---

[4] This date coincidentally is on or about the same date that Doehla paid Merrill $5,000 in cash.

conceived motion which produced no legal authority in support of its position immediately and without a hearing as soon as the opposing side responded. Merrill should receive no credit for filing the *de minimis* State Court Motion. Based on the relevant timeline, it appears that Merrill charged Doehla $5,000 in cash for Merrill's State Court Motion, which was soundly derided by the state court judge and denied without a hearing.

The Retainer Agreement also indicates that Merrill "**will file** two additional Chapter 11 cases in the Bankruptcy Court, one for Gary Doehla and one for GHMD, LLC." (Emphasis added). Those two additional Chapter 11 cases were never filed. As contemplated by the Retainer Agreement, Doehla pays Merrill $25,000.00.

**Second** – On December 20, 2017, Merrill files his Notice of Appearance and Request for Service [ECF 13], and the Joint Motion to Substitute [ECF 14] as counsel, replacing former counsel Tomas Pila. On or about December 21, 2017, Merrill instructs Doehla to also pay him $5,000 in cash, above and beyond the $25,000 already paid. Doehla complies and pays Merrill $5,000 in cash. As discussed above, it appears that this $5,000 in cash was related to the state court action contemplated by the Retainer Agreement, but Merrill had Doehla pay $5,000 in cash separately from the $25,000 already paid only about two weeks earlier.

**Third** – Merrill is substituted in as counsel, and eventually his Application to Employ himself [ECF 22] comes on for hearing. The Court approves Merrill's employment by Order [ECF 33], authorizing Merrill's employment on a general retainer, *pursuant to* 11 U.S.C. §§ 327 and 330, and specifically noting that "[a]ny references to the retainer agreement stating 'being earned upon receipt,' needing to be 'replenished' or that invoices will automatically be charged against the retainer are deemed stricken and are of no force and effect.

**Fourth** – This case proceeds, but there is little legal work actually done. No disclosure

statement or plan is ever filed.  Merrill filed **one** substantive motion related to some confusion

regarding the automatic stay and its effect on state court actions, but that motion was denied.[5]  The

case was open for fifteen months and twenty days with Merrill as counsel, and went nowhere.  The

Debtor-In-Possession reports reflect practically no activity except for payment of United States

Trustee ("UST") fees. *See*, e.g. ECF 70, which shows zero activity and is essentially a blank report.

**Fifth** – The UST moves to dismiss the case on April 15, 2019 [ECF 71].  In pertinent part,

that Motion to Dismiss states that:

> 2. The Debtor's Bankruptcy Schedules ("Schedules") and Statement of Financial
> Affairs ("SOFA"), disclose, among other things, that the Debtor is not operating,
> has no employees, no income, no cash or cash equivalents, no account receivables,
> or investments.  The Debtor discloses that it holds title to real estate in Taylor
> County, Florida, valued at $17,000.  In SOFA item 7.1, the Debtor discloses a
> malpractice claim pending in Volusia County, Florida, of unknown value.
>
> 3. According to the Debtor's Chapter 11 Case Management Summary (ECF 7), the
> Debtor's reason for filing this case is due to the "[potential] exposure to pending
> litigation."  Upon information and belief, this litigation is the same proceeding
> discussed above in Volusia County, Florida.  The Debtor filed its Motion to Set
> Aside Final Judgement as Void Ab Initio (ECF 30), and same was denied by this
> Court at ECF 57.  With this outcome, it is not clear if there is anything else for this
> Debtor to do in bankruptcy.
>
> 4. It has been well over a year since the filing of this case and the Debtor has done
> nothing to move this case towards confirming a plan of reorganization.
>
> 5. The Debtor's exclusivity period under § 1121(b) was extended to December 6,
> 2018, by this Court's order at ECF 55.  Debtor filed a second motion to extend
> exclusivity on December 6, 2018 (ECF 64), requesting an extension through March
> 6, 2019.  That motion was scheduled for hearing on January 2, 2019, however, there
> is no corresponding order on the docket, therefore, it is not clear to the United States
> Trustee, whether the Debtor's exclusivity period expired already.  If the Debtor's
> exclusivity period expired, the Debtor has not filed a Disclosure Statement and

---

[5] *See* ECF 30, Debtor's Motion to Set Aside Final Judgment Ab Initio, ECF 45, Creditor Daniel J. Webster, P.A.'s
Response in Opposition thereto, and ECF 57, Order Denying Debtor's Motion to Set Aside Final Judgment as Void
Ab Initio.  "The Court previously stated that the state court's grant of the motion to strike was a violation of the
automatic stay.  However, the order that is the subject of the Motion granted summary judgment with respect to the
*Debtor's counterclaim*, which ruling was not stayed.  The ruling on the motion to strike duplicated the relief already
granted by summary judgment so the fact that the state court's additional ruling is void has no impact on the
summary judgment. (Emphasis added).  [ECF 57, fn. 1].

Plan, and pursuant to § 1112(b)(4)(J), failure to confirm a plan within the time fixed by § 1121(b) is cause for dismissal.[6]

8.  The Debtor's failure to move this case forward to confirmation demonstrates a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  Pursuant to § 1112(b)(4)(A) the absence of a likelihood of rehabilitation is cause to dismiss this case.

9.  The foregoing factors are indicative of the Debtor's inability to manage its affairs and effectively maneuver through the reorganization process.  There appears to be an absence of a reasonable likelihood of rehabilitation and an unlikely ability to effectuate a plan, and therefore, it is in the best interest of creditors and the estate that this case be dismissed.

In other words, the UST observed that *nothing* was being done in this case, there was no chance for success, and that it was in the best interest of creditors and the estate that the case be dismissed.

**Sixth** – The Motion to Dismiss comes on for hearing.  Merrill appears by phone, and Doehla appears in the courtroom, noting that "I'm not contesting anything of the dismissal.  I just have a concern about the fees."  [*See* Transcript, ECF 80, 4:12-14].  The Court proceeds to dismiss the case with a one-year prejudice period, and then the attorney for the UST states "[a]pparently the trust that he manages is the one that paid the $25,000 retainer in this case.  There has been no fee application.  Would the Court retain jurisdiction to hear any fee issues?" [*Id.* at 6:18-22].  The Court agreed and retained jurisdiction, and then Merrill stated "I will point out, based on the retainer – on the application that we filed, there were no fees taken for this case, but I'm happy for the Court to retain jurisdiction, and we can deal with that later."  [*Id*. at 7:1-5].  This case is closed on August 2, 2019.

**Seventh** – In mid-August, 2020, Doehla hires undersigned counsel to recoup the fees paid in this case that went nowhere.  Undersigned counsel reaches out to Merrill.  Merrill is unable to

---

[6] Subsequent paragraphs 6 and 7 relate to failure to file timely monthly operating reports, and are omitted for brevity.

produce any records of timekeeping relating to this case. Accordingly, undersigned counsel files the Motion to Reopen and Motion for an Accounting [ECF 82], simply asking the Court to reopen this case and direct Merrill to provide an accounting. Merrill objects and responds [ECF 86], stating among other things that **he has no time entries due to a computer virus** and that he would have to "redo" the invoices with the assistance of "collateral sources of information." Merrill furthermore states that none of the $25,000 retainer would be set aside for this case, and that this case would proceed with no retainer, and that the $25,000 retainer was "credited to the several other cases that Mr. Doehla asked to be represented on."[7] "The entirety of the retainer would be for two other proposed cases as well as at least one other case pending in state court." Just to be clear, in this filing, there can be no mistake that Merrill is *claiming* that he billed the $25,000 retainer to the limited state court action case and two bankruptcy cases that were never filed, and that there was no retainer paid in this case, which is contrary to the language of the Retainer Agreement and the Order approving Merrill's employment [ECF 33]. Doehla paying Merrill $25,000 for the three other cases, two of which don't exist, and one was just filing an ill-conceived and poorly executed motion in state court, is blatantly absurd.

**Eighth** – Undersigned counsel files his Reply [ECF 87] and Motion to Disgorge as soon as possible, pointing out that Merrill was retained on a *general retainer* pursuant to 11 U.S.C. §§ 327 and 330, and noting that any recreated or redone records in this case would be "dubious at best, and their probative value would be less than worthwhile." Any "redoing" of the invoices at this point in time lacks a substantial amount of credibility that would never be an issue with original documents. Undersigned counsel requested disgorgement of the $25,000 retainer.[8]

---

[7] Those other cases are two bankruptcy cases that were never filed and the very limited action in Volusia County, as discussed *supra*.
[8] At that point in time, undersigned counsel was unaware of the subsequent $5,000 cash payment from Doehla to Merrill, which now seems to correspond to the limited state court action.

**Ninth** – The Motion to Reopen and Motion for an Accounting [ECF 82], along with Merrill's Response and Objection [ECF 86], and undersigned Reply and Motion to Disgorge [ECF 87] come on for hearing. In pertinent part, the Court questioned Merrill regarding the Retainer Agreement and the $25,000 retainer.

> The Court: Then I have an order allowing you to be retained, which specifically says the retainer cannot be used in the manner that the retainer agreement describes. Then we have a final order that retains jurisdiction of your fees. So what I'm trying to understand from you is, are you telling me that you never received $25,000 from Mr. Doehla, or are you telling me that you have separate retainer agreements from Mr. Doehla on those other matters that describe that the money was paid to you, the 25,000, was not the $25,000 referenced in the retainer agreement that was attached to your application to be employed?

> Mr. Merrill: Different. I'm saying that the retainer agreement – that the Greenway case was a tagalong, and that at the hearing on the 14th of February, 2018, it was put in the sunshine and vetted and explained that none of the retainer would be a part of the Greenway case. And so the retainer that's being talked about isn't the 25,000, it's a phantom retainer of zero. It doesn't define the fact that the retainer is zero, but it is, in fact, zero, and always was intended to be zero."[9] [*See* Transcript, ECF 82, 14:4-15:2].

> …

> Mr. Merrill: In the event that you direct the filing of a fee application, I would ordinarily be separating the various entities, but as the two were absolutely and intimately related to this affiliated entity, I would like the opportunity to include that time in any fee application, as it is relevant and related, and is part of that retainer agreement.[10]

> The Court: Here's what I'm going to do, Mr. Merrill. If I order the filing of a fee application, you will take a look at the Bankruptcy Code, and you will file the fee application and your retention order – the order retaining you – and you will file the fee application that you believe is appropriate under the Bankruptcy Code, and you decide what that is. [*Id.* at 18:7-22].

---

[9] Notably, this response indicates that there are no *other* retainer agreements between Doehla and Merrill, and that we are indeed talking about **4** cases: this case, limited action in a state court case, and two bankruptcy cases that were never filed.

[10] It appears here that Merrill is positing that he will simply combine *all* of the time that he expended on any Doehla matter into a fee application for *this* case for *this* Debtor, where nothing was really done. This may in fact be what Merrill has done with his Fee Application [ECF 95]. Of course, pursuant to 11 U.S.C. § 330(a)(4)(A)(ii)(I-II), the Court shall not allow compensation for services that were not reasonably likely to benefit **the Debtor's** estate or for services that were not necessary to the administration of **the** case. (Emphasis added).

**Tenth** – The Court grants the Motion to Reopen by Order [ECF 88] and after reviewing audio from prior hearings enters an Order Setting Deadline to File Fee Application [ECF 91], which directed Merrill to prepare and file his fee application and motion to approve.

**Eleventh** – Merrill files his *Amended* Disclosure of Compensation [ECF 94].[11] *See* Exhibit 4. The Disclosure of Compensation of Attorney for Debtor, Form 2030 (updated December 2015) is a standard form used in every bankruptcy court in the United States, in conjunction with local rules. The standard instructions for the form are included as Exhibit 5.[12] In addition to basic instructions for identifying the judicial district, inserting the name of the debtor as it appears in the bankruptcy petition, and including the appropriate case number, the "instructions for the rest of the form are self-evident." However, Merrill has modified the form by indicating that he took zero retainer in this case, but adding a footnote to explain "$25,000 was paid as a retainer for multiple matters, of which this is one. However no portion of the retainer paid was set aside for this case." This simply does not make sense in light of prior orders in this case as discussed *supra*, and the absurd nature of this alleged "phantom retainer of zero" is exposed clear as day by a simple standard form, whose instructions are "self-evident" but are impossible for Merrill to follow given the nature of what Merrill would have this Court believe. In other words, Merrill claims that he took no retainer in this case, but did take a $25,000 retainer for a set of cases, including this one, but this one was specifically zero. None of this is credible or believable.

**Twelfth** – Merrill files the Fee Application. The Fee Application requests $36,898.60 in net payment requested.[13] In this History of Fees and Expenses section, there is **nothing** listed for

---

[11] Undersigned counsel cannot find a prior Disclosure of Compensation for Merrill on the docket.

[12] Downloaded from The United States Courts website, https://www.uscourts.gov/forms/bankruptcy-forms/disclosure-compensation-attorney-debtor-0 (Last visited November 25, 2020, select "DOWNLOAD FORM INSTRUCTIONS").

[13] This includes entries from 8/17/20 – 10/25/20 totaling $2,662.60, which ostensibly involve Merrill defending the $30,000 he already received from Doehla, and while Doehla had already employed undersigned counsel. Doehla should not be forced to pay both sides of the litigation in this fee dispute, and none of these sorts of time entries are

date, source, amount of third-party payment and/or credit received:  Merrill has given Doehla no

credit for the $25,000 that Doehla delivered to Merrill pursuant to the Retainer Agreement and the

$5,000 in cash that Doehla delivered pursuant to Merrill's instructions, likely related to the limited

state court action contemplated by the Retainer Agreement.   In effect, Merrill is asking for

$36,898.60 in addition to $30,000 already received for a total of **$66,898.60** in compensation for

the *minimal* work done in this case that was dismissed after a motion from the UST which

highlighted the lack of work and progress, extremely limited and ill-conceived action in a state

court case that also went nowhere, and for two bankruptcy cases that were never filed.  This request

is shocking.

### The Fee Application is Not Based on Actual, Contemporaneous Records, is Not Supported by Any Evidence, and Should be Stricken

Section 330 of Title 11 provides that the court "may award … a professional person

employed under section 327… (a)(1)(A) reasonable compensation for actual, necessary services

rendered by the … professional person, and (a)(1)(B) reimbursement for actual, necessary

expenses."  Furthermore, in determining the amount of reasonable compensation to be awarded to

a professional person, the court shall consider the nature, extent, and the value of such services,

taking into account all relevant factors, including the list of factors specified in 11 U.S.C. § 330

(a)(3)(A-F).

Under normal circumstances, Merrill would have provided his actual, contemporaneously

created time records, and the parties *could* have had a reasonable discussion or disagreement about

those records, and reasonable litigation might occur, where each side would argue about the nature,

extent, and the value of such services as indicated in the actual, contemporaneous records.   Indeed,

as this Court indicated at the hearing on the Motion to Reopen and Motion for an Accounting on

September 16, 2020, a Fee Application may be required, and "[t]hen we'll determine the

reasonableness of whatever fees are requested, and then the balance will be returned to Mr. Doehla

---

appropriate for the Court to consider a fee award pursuant to 11 U.S.C. 330 (a)(1)(A) and/or (3)(A-F) as actual, necessary services for the Debtor.

or to whomever paid the retainer." [Transcript, ECF 82 at 17:9-12]. But that presupposes that the time entries in the Fee Application are bona fide, legitimate entries, which is not the case here.

There are admittedly *no time records* that Merrill is basing the Fee Application upon. To directly engage with Merrill's Fee Application from the start is to take the records provided at their face value, which Doehla and this Court should not and cannot do. The time entries provided within the Fee Application are merely Merrill's *recreation* of what those time entries could have been, or more likely what Merrill *hopes they were*. The time entries created well after the fact are unsworn and unsupported by any corroborating evidence, and the Fee Application itself as a whole is akin to a self-serving affidavit.

Merrill's failure to have a reasonable record retention system in place that was impervious to computer viruses (perhaps, for example, by taking advantage of easily available cloud storage, or basic email), is his own fault, assuming that his computer virus claims are true and that he actually kept detailed time records that were destroyed by the "HARMA" virus.[14] A 2006 Florida Bar Ethics Opinion states that "[f]iles stored electronically must be readily reproducible and protected from inadvertent modification, degradation, or destruction."[15] This non-binding advisory ethics opinion was notably released over 14 years ago. Proper electronic storage of important documents is no mystery or Herculean task: it is simple, commonplace, and required. Merrill either failed to do so, or never kept time records at all, but in any event he had no time records, and was forced to "redo" them, and those redone records are now before the Court.

The failure to maintain such records may result in a denial of any fees to counsel. *In re Newman*, 2003 WL 751327, at *3 (Bankr. M.D. Fla. Feb. 18, 2003) (citing *In re Haynes*, 216 B.R. 440, 443 (Bankr. D. Colo. 1997) ("Without such time records, attorneys cannot carry their burden of justifying the fees charged or requested.")) A party seeking attorneys' fees must keep meticulous, contemporaneous time records that reveal for each lawyer whose fees are sought, all hours for which compensation is requested and how those hours are allocated to specific tasks. *Simon v. Leaderscape LLC*, 565 F.Supp.2d 1332, 1335 (S.D. Fla. 2008). When a Court is faced with a determination of whether or not an attorney's fee is reasonable, the moving party "must provide the Court with contemporaneous time records detailing the dates, amount, and specific

---

[14] A brief Google search indicates that the HARMA virus is a type of ransomware, in which files are locked and inaccessible unless you pay a ransom fee to unlock your files.
[15] See Exhibit 6, Florida Bar Ethics Opinion 06-1 from April 10, 2006, ¶1.

services provided." *Nibbelink v. Wells Fargo, N.A. (In re Nibbelink)*, 403 B.R. 113, 122 (Bankr. M.D. Fla.2009) (citing *In re Newman*, 2003 WL 751327, at *3.

> Contemporaneous time records, if they ever existed, do not exist now. As Merrill states:
>
> Ordinarily it would be a simple matter of resending the invoices previously sent.[16] However, the undersigned suffered an [sic] catastrophic loss of all his computer data to the HARMA virus in November, 2019. All of the undersigned's data would have been completely lost had it not been for the fact that he had transitioned from a prior physical computing system in March, 2019, which effectively "air gapped" any data that was on those computers. The HARMA virus is, as was explained to the undersigned by a member of the IT team that ultimately got him back up and operational, a next generation virus that lies in wait, looking for any backup files that exist, and corrupting those as well, wreaking an utter loss of data in its path. It is for this reason that resending the invoices was not a simple matter as it ordinarily would have been. [ECF 86, ¶ 7].

Merrill further admits that he is "redoing the invoices" which "requires the use of collateral sources of information." [ECF 86, ¶ 9]. No discussion of the purported collateral sources is ever provided in any document, including the Fee Application. While the Eleventh Circuit has held that the time records need not necessarily be contemporaneous, other reliable evidence of attorney, hours, and dates for the time sought for specified tasks are required. *See Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988), *aff'd*, 496 U.S. 154 (1990). In *Jean*, the Eleventh Circuit Court of Appeals rejected the government's contention that the attorney's fees requests were not supported by sufficient documentation, "given the detailed record in the fee proceedings … and that contemporaneous time records are not indispensable where there is other reliable evidence to support a claim for attorneys fees." *Jean,* 863 F.2d at 772.

Here, there is no detailed record in any fee proceedings, and there is no other reliable evidence presented to support a claim for attorney's fees. There are only the admittedly "redone" time entries produced by Merrill, which are admittedly recreations

---

[16] Doehla denies ever receiving any invoices. *See* Exhibit 1.

from unknown and unpresented "collateral sources." Because the Fee Application is admittedly a post-hoc fabrication, and there is no other supporting evidence, the entirety of the Fee Application should be stricken or disallowed in full.

## A Heavy Downward Departure Is Appropriate

Should the Court be unwilling to strike and disallow the Fee Application in total, then a heavy downward departure from the amount of fees requested is appropriate. Pursuant to 11 U.S.C. § 330 (a)(2), the Court may award compensation that is less than the amount of compensation that is requested. This Court can and should review the totality of the bizarre circumstances here and reduce the compensation accordingly, and has made similar reductions in other cases. *See, e.g., In re Nestor*, 2019 WL 4735833 at *10 (Bankr. S.D. Fla. Sept. 26, 2019)(the Court determined that it was appropriate to reduce the fees awarded to a law firm by $38,195 due to the law firm's performance).

Merrill has requested the total amount of $36,989.60. This is a shockingly high number, in part because the Fee Application gives Doehla zero credit for the $25,000.00 retainer paid in this case, and the $5,000.00 in additional cash that Doehla gave to Merrill, likely for a state court case that was contemplated by the Fee Application.

## The Disappearing $25,000 Retainer and the $5,000 in Cash

While Merrill claims that there was no retainer in this case, or that it was a "phantom retainer of zero" [Transcript, ECF 93, 14:25],[17] the facts are much simpler. Merrill was paid directly by Doehla for his services: a $25,000 retainer fee and an additional $5,000 in cash. *See Exhibit 1*, Affidavit of Gary Doehla. On August 9, 2018,

---

[17] Merrill also stated "We didn't take any retainer in this case." [Transcript, ECF 82, 12:14]. "There was never a retainer paid in the Greenway case at all." [Transcript, ECF 82, 15:4-5].

Merrill was formally employed via order [ECF 33] which stated in pertinent part that Mr. Merrill was retained on a *general retainer* pursuant to 11 U.S.C. §§ 327 and 330. The employment letter provided by Merrill contemplates the possible representation which necessitated a retainer: taking over the representation of Greenway LLC in case 17-23693-LMI (this happened, Merrill **did** take over representation in this case), filing two additional Chapter 11 cases in the Bankruptcy Court (this **did not** happen), and limited action in a state court case in Volusia County, Florida (which **did** happen, but it was indeed limited action and poorly executed).

What we are left with is a retainer agreement that specifically states "[t]he Client agrees to pay the Firm a retainer of $20,000.00 for fees… [i]n addition, the Client agrees to pay a $5,000 cost retainer. … In order to protect the Firm we will require a retainer of $25,000 as set forth above." [ECF 86-1]. The retainer agreement is dated December 8, 2017. The $25,000 check is *unsurprisingly* also dated as December 8, 2017, and was clearly a retainer for this case. The $5,000 in cash was obtained on or about December 21, 2017.

And yet, Merrill claims that there was no retainer in this case (and never mentions the $5,000 in cash paid to him), and instead Merrill claims that "[n]one of the retainer would be set aside for this case, which would proceed with no retainer, and the entirety of the retainer would be for two other proposed cases as well as at least one other case pending in the state court." [ECF 86, ¶ 5]. The two other proposed cases *never happened* and the action in the state court was admittedly "limited action." If the $25,000 retainer was never going to go to the Greenway, LLC representation, and the two other proposed cases never materialized, where did the $25,000 retainer go? It has not been returned to Doehla.

Merrill claims that "the entire amount of the retainer paid was ultimately credited to the several other cases Mr. Doehla asked to be represented on and zero dollars of the amount paid was attributable to this Debtor." [*Id*. at ¶ 8].  There are no other records showing that this retainer paid was "ultimately credited to several other cases" (two of which do not even exist).

Merrill would have this Court believe that the $25,000 retainer was credited to "other cases," without any mention of being paid an additional $5,000 in cash, and would now like to be awarded $36,989.60, in addition to the $30,000 he has already been paid but has no records of receiving that money or how it was attributed to other cases.   There has been no evidence of $25,000 of work being done in *other* cases, and yet credit for that payment (and the $5,000 cash payment) has disappeared and is nowhere to be found.

That proposition is absurd and hardly squares with the order granting employment retained on a *general retainer* pursuant to 11 U.S.C. §§ 327 and 330.  This proposition is so absurd and unusual that Merrill had to personally modify Form 2030 by putting a footnote on his indicated retainer of "$0.00" which states "$25,000.00 was paid as a retainer for multiple matters, of which this is one.  However no portion of the retainer paid was set aside for this case."  The explanation is so bizarre and unorthodox that it cannot be readily described on an official United States government form designed to explain precisely and simply the disclosure of compensation of attorney for Debtor.

### Incorrect Standard for Fee Applications

Merrill utilizes the incorrect factors in his Fee Application to pursue an award. "The general standards for setting attorney's fees in the Eleventh Circuit are now found in *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).  Although

*Norman* involved application of the civil rights fee-shifting statute, 42 U.S.C. Section 1988, guidelines established in the civil rights cases have been applied in bankruptcy cases for the determination of appropriate fees.  Prior to the *Norman* decision, the Eleventh Circuit standards for reasonable attorney's fees were found in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).  The *Norman* decision reflects an effort by the Eleventh Circuit to conform with recent United States Supreme Court decisions.  *In re Davis,* 1989 WL 1718763 (Bankr. S.D. Ga. Sept. 8, 1989).  Unfortunately, Merrill only used the standards presented by *Johnson v. Georgia Highway Express*.

The *Norman* factors start with an analysis of a reasonable hourly rate (hours reasonably expended multiplied by a reasonable hourly rate).[18]  Following that, an ascertainment of reasonable hours, with "excessive, redundant, or otherwise unnecessary" hours should be excluded from the amount claimed.  Next, the Court must consider the "necessity of an adjustment for the results obtained.  "If the result was excellent, then the court should compensate for all hours reasonably expended."  *Norman,* 836 F.2d at 1302 (internal citation omitted).  If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive.  In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or *it may simply reduce the award by some proportion*.  (Emphasis added).  A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.  Where all theories derive from a common core of operative facts, the focus should be on the significance of the overall results as a function of total reasonable hours. *Id.*

---

[18] Here, the *Johnson v. Georgia Highway Express* factors are relevant and useful, but they do not explain the entire story.

The procedure is further outlined in Norman, and appears to specifically contemplate the situation the Court now finds itself in.

> "For decades, the law in this circuit has been that:  The Court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.  Therefore, where the time of fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience.  Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing.  Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account.  It is perfectly proper to award attorney's fees based solely on affidavits in the record.  *Id*. at 1303. (Internal citations omitted)

### Requested Departure from the Time Entries

Should the Court be unwilling to completely strike the "redone" time entries because they are admittedly not contemporaneous or supported by any evidence, Doehla requests that the Court consider the *Norman* factors and procedure and utilize its own expertise and form an independent judgment as to the amount of fees that should be awarded to Merrill in this case.  Engaging directly with the post-hoc fabricated time entries would be an exercise in fantasy, not worth anyone's time or effort, and it would lend them validity that is not warranted.

In summary, and hopefully helpful to the Court's analysis under *Norman*:

- Merrill failed to keep proper records, and has provided time entries that are post-hoc fabrications.

- Merrill cannot reasonably explain his concept of a "phantom retainer of zero" in this case, it does not fit into standard form 2030, and this court approved Merrill's

17

employment pursuant to 11 U.S.C. §§ 327 and 330, striking a provision that the retainer was "earned upon receipt."

- This case went nowhere and minimal legal work was done, other than sorting out some apparent confusion regarding the automatic stay (*see* footnote 5). Merrill did file various motions to extend time and several Monthly Operating Reports that reflect practically no activity except for payment of UST fees.

- Doehla paid Merrill $25,000 as a retainer for *this case*, two bankruptcies that were never filed, and limited action in a state court case… where it appears that Merrill instructed Doehla to *also* pay him $5,000 in cash, even though that case was specifically contemplated by the Retainer Agreement. That $30,000 total has neither been credited in the Fee Application, nor returned to Doehla.

- Merrill states that the $25,000 was credited to the "other cases" but nothing of significance was ever done in those cases. Nothing of significance was really done in *this* case either.

- Analysis of a Fee Application in this case is bound by 11 U.S.C. 330 (a)(4)(A)(i-ii), and the Court shall not allow compensation for unnecessary duplication of services or services that were not reasonably likely to benefit the Debtor's estate or necessary to the administration of the case.

<u>**Conclusion**</u>

The Court now has a chance to undo an injustice in this case. Merrill has already been paid $30,000 for this case that went nowhere, a pointless state court motion, and two bankruptcy cases that do not exist. That payment in and of itself is unreasonable. To grant Merrill an additional $36,898.00 on top of that would be unfathomable. This Court should see the Fee Application for

what it is: a post-hoc fabrication without evidence that is self-serving to Merrill, strike it, and direct disgorgement of the $30,000 that Doehla paid. In the alternative, the Court should fashion a resolution pursuant to the procedure outlined in *Norman*, and heavily reduce the fees awarded to Merrill for his work in this case, while giving credit to Doehla for the $30,000, resulting in a substantial payment due from Merrill to Doehla. Merrill does not deserve anywhere near $68,898 as requested in this case.

**WHEREFORE**, interested party Gary Doehla respectfully requests that this Court enter an order striking the Fee Application and directing Merrill to disgorge the $30,000 that Doehla already paid, or in the alternative, that this Court fashion its own remedy pursuant to *Norman*, heavily reduce the amount of fees requested by Merrill while crediting Doehla for $30,000 in payments, resulting in a substantial payment due from Merrill to Doehla.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served on all counsel of record in this case as listed on the electronic service systems with the Clerk of the Court for this this 27th day of November, 2020.

FENDER, BOLLING, AND PAIVA, P.A.

*/s/ Michael H. Bolling*
MICHAEL H. BOLLING, ESQ.
Florida Bar No. 0117626
*Attorney for Interested Party Gary Doehla*
2645 Executive Park Drive, Ste. 137
Weston, FL 33331
Telephone: (954) 618-1003
Email: michaelbollingpa@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                                    Case no.: 17-23693-LMI

**Greenway, LLC,**                                  Chapter 11

       Debtor.

_____/

**<u>AFFIDAVIT OF GARY DOEHLA</u>**

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

Gary Doehla being duly sworn, says:

1.  I am the Manager of Greenway, LLC, the Debtor in this case.

2.  On December 8, 2017, I signed a retainer agreement that retained the legal services of David Merrill and Merrill PA. The retainer agreement contemplated legal services in this case, two other potential bankruptcy cases, and limited action in a state court case. A copy of that retainer agreement is included as Exhibit A to this Affidavit.

3.  I signed the retainer agreement on behalf of myself, and as authorized signatory for GHMD, LLC, and Greenway, LLC. A personal bankruptcy for myself, and one for GHMD, LLC, were contemplated by the retainer agreement, but those cases were never undertaken nor filed.

4.  On December 8, 2017, I paid Merrill Law, PA, $25,000 as contemplated by the retainer agreement. A copy of that check is included as Exhibit B to this Affidavit.

5.  It was my understanding that the $25,000 was for representation in this case, two other potential bankruptcy cases, and limited action in a state court case. That is why I signed the retainer agreement, and that is my understanding of what the retainer agreement says.

6.  I do not know or understand how "the entire amount of the retainer was ultimately credited to the several other cases" that I asked to be represented on, as David Merrill stated in his filing in this case at ECF 86, ¶ 8.

7.  I do not agree that there was no retainer in this case, or that there was a "phantom retainer of zero" for this case as stated by David Merrill at the hearing on the Motion to Reopen this case on September 16, 2020.

1

# Exhibit 1

8.      In addition to the $25,000 retainer, I also provided David Merrill with $5,000 in cash as he directed me to do in conjunction with representation in this case on or about December 21, 2017.

9.      I believe that I have paid $30,000 in total in this case to David Merrill. A $25,000 retainer, and $5,000 in cash shortly thereafter.

10.     I have no knowledge whatsoever regarding how the $30,000 that I delivered to David Merrill was applied to any case. I never received any periodic, hourly, progress, or other itemized billing from David Merrill on any case, until he recently submitted a purportedly "reconstructed" fee application in this case.

FURTHER AFFIANT SAYETH NAUGHT

Gary Doehla

State of Florida, County of _Miami-Dade_
The foregoing instrument was acknowledged before me via ☑ physical presence or ☐ online notarization this _25_ day of _November_, 20 _20_. By _Gary Doehla_
Personally known _____ OR produced identification _X_
Type of identification produced _Florida Drivers License_

Notary Public, State of Florida
My Commission Expires: _01/27/2024_

ANDREW GARCES
Commission # GG 951839
Expires January 27, 2024
Bonded Thru Budget Notary Services

2

# EXHIBIT A



December 8, 2017

Gary Doehla
GHMD, LLC
Greenway, LLC
6751 SW 76t Terrace
Miami, Florida 33143

Dear Client:

The firm of Merrill PA ("Firm") appreciates the opportunity to (1) take over representation of Greenway LLC currently pending in the United States Bankruptcy Court for the Southern District of Florida "Bankruptcy Court" (Case #17-23693-LMI), and (2) will file two additional Chapter 11 cases in the Bankruptcy Court, one for Gary Doehla and one for GHMD, LLC. The Firm will also take limited action to set aside the final judgment entered against Gary Doehla and GHMD, LLC in Case No 2014CC31160 pending in the Circuit Court of Volusia County, Florida.

A written engagement agreement is required or recommended by the law of professional ethics in the jurisdictions where the Firm practices law. The engagement agreement between us consists of this letter and Standard Terms and Conditions of Engagement ("Standard Terms"). The engagement agreement is designed to address our responsibilities to each other and to outline for you certain important matters that are best established early as we form an attorney-client relationship with you in this matter. We request that you review this agreement carefully. By proceeding with this engagement you will be indicating to us that you have done so. It is important that you review and understand the terms of our relationship.

The Client agrees to pay the Firm a retainer of **$20,000** for fees. The retainer shall be paid in full before any work is performed and before the filing of the case and is deemed EARNED WHEN PAID. In addition, the Client agrees to pay a **$5,000.00** cost retainer which consists of the filing fee and for other expenses as set forth below. THIS COST RETAINER MAY NOT BE USED TO PAY ANY PERIODIC UNITED STATES TRUSTEE FEES.

The Firm's fees are based on the billing rate for each person devoting time to this matter. The Firm's hourly rates range from $450 per hour for attorneys and $120 to $145 for paralegals. These billing rates are subject to change, usually as of January 1 each year. Please note that, under our Standard Terms, invoices for our fees are payable within thirty days of the date of our statement.

Our fees are the responsibility of the Client. The Firm will provide detailed billing statements to you on a monthly basis. In order to protect the Firm we will require a retainer (the "Retainer") of **$25,000** as set forth above. We will draw upon the Retainer



for the payment of each monthly bill until the Retainer is depleted and then the Client will be required to refresh the Retainer each month. Any amount remaining in the Retainer will be refunded, if any, at the conclusion of the representation.

Please confirm your acceptance of this engagement by signing and returning a copy of this letter. If you do not agree with one or more of the provisions of the engagement, please contact me so that we can address your concerns. We look forward to representing the interests of the Committee and appreciate the opportunity to do so.

Sincerely,
**MERRILL PA**

BY: _____

David Lloyd Merrill, Esq.,
For the Firm.

**Letter and Standard Terms Accepted, Including "Conflicts of Interest" Section**

By: _____

Gary Doehla

By: _____

GHMD, LLC
Gary Doehla, Authorized Signatory

By: _____

Greenway, LLC
Gary Doehla, Authorized Signatory

Date:      December 8, 2017

# EXHIBIT B

HOWARD DOEHLA REVOCABLE TRUST
12920 SW 80 Ave
Pinecrest, FL 33156

3115
63-466/631

12/8/17

Pay to the Order of  MERRELL LAW PA            $ 25,000.00

Twenty-five thousand and 00/100            Dollars

**REGIONS**

For REPRESENTATION RETAINER

⑆063104668⑆ 0084741589⑈03415

Deposit Only

| | |
|---|---|
| Posting Date | Dec 08 2017 |
| DB/CR | D |
| Amount | $25,000.00 |
| Item Bank | 92 |
| Account | 84741589 |
| Check No | 3415 |
| Posting Seq No | 3000669712 |
| Business Unit Seq No | 0000000000 |

5

Filing # 65732160 E-Filed 12/21/2017 07:25:43 PM

## IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
## IN AND FOR VOLUSIA COUNTY, FLORIDA

DANIEL J WEBSTER, PA V.                    Case No.: 2014 31160 CICI

        Plaintiff,


V

GARY DOEHLA, et al, etc.

        Respondent.

_____/

### MOTION TO SET ASIDE FINAL JUDGMENT as VOID AB INITIO

**COMES NOW** the Respondent, GARY DOEHLA by and through his undersigned attorney, and files this Motion to Set Aside Final Judgment and would state as follows:

1.  A Partial Final Judgment was entered November 22, 2017.

2.  Greenway LLC filed bankruptcy on November 13, 2017, Case #17-23693-LMI in the Southern District of Florida.

3.  Included as property of the bankruptcy estate is a malpractice claim against Daniel J. Webster, P.A.

4.  In the Final Judgment, the court granted a Motion to Strike effectively eliminating property of the bankruptcy estate in violation of 11 USC s 362.

5.  Other elements of the Final Judgment also were entered in violation of 362.

6.  In further support of this position is a transcript attached hereto as Exhibit A wherein Chief Judge Laurel Isicoff states that the final judgment violates the stay.

7.  The state court has and had no authority to enter the Final Judgment and as such it is void an initio and of no effect.

**WHEREFORE** the Defendants respectfully request this court enter an order setting aside its Final Judgment and for such other and further relief as this court may deem just and proper.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was e-serviced to Clay Coward, Esquire, Wicker, Smith Et Al., 390 N Orange Ave., Suite 1000, Orlando, FL 32801

Exhibit 2

([ccoward@wickersmith.com](mailto:ccoward@wickersmith.com)); Daniel J Webster, 444 Seabreeze Blvd., Suite 360, Daytona

Beach, FL  32118 ([service@websterpa.com](mailto:service@websterpa.com)) this 21st day of December.

**MERRILL PA**

By:  _/s/ David Lloyd Merrill, Esq._
   DAVID LLOYD MERRILL, Esq.
   Florida Bar No. 99155
   Citizens Building
   105 S Narcissus Ave., Ste. 802
   West Palm Beach, FL  33401
   (o) 561.877.1111
   (f)  772.409.6749
   Attorney for Respondent
   dlmerrill@merrillpa.com

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
VOLUSIA COUNTY, FLORIDA

CASE NO.:   2014 31160 CICI
DIVISION:   31

DANIEL J WEBSTER PA
Plaintiff(s)

v.

GARY DOEHLA
Defendant(s)

_____/

## ORDER DENYING COUNTER-PLAINTIFF'S MOTION TO SET ASIDE FINAL JUDGMENT AS VOID AB INITIO AND CANCELING HEARING

THIS CAUSE has come before the Court upon Defendant's Motion to Set Aside Final Judgment as Viod Ab Initio and Canceling Hearing. The Court being fully advised in the premises, finds as follows:

The Counter-Plaintiff filed the motion to set aside the final judgement based upon a transcript from a status conference hearing in Greenway LLC bankruptcy case #17-23693-LMI. A review of that transcript shows the Counter-Plaintiff's former bankruptcy attorney, Thomas Pila, advising Judge Isicoff that this Court entered an order striking Greenway's LLC's pleadings *in violation* of the stay. None of this Court's numerous orders, all making specific provisions for the stay applicable to Greenway LLC, were produce to the bankruptcy court. (*see* DKT# 122, 123, and 124) The Court is reluctant to say that Mr. Pila misled the bankruptcy court via omission. The transcript is what it is. The statements of Judge Isicoff seem to be more related to a potential case management issue rather than a ruling. It is clear this issue was not noticed that day in bankruptcy court. There are no pleadings or papers which accompany this motion suggesting that an order was ever issued on this matter. Rather, it seems to be an invitation that if the situation is as Mr. Pila stated than a motion needs to be filed with this court. There is nothing within that transcript which relieves counsel's obligations to produce legal authority in support of their positon, make a specific prayer for relief, or even setting this motion for hearing. The transcript is simply not enough,

# Exhibit 3

04/05/2018 01:54:14 PM Clerk of the Circuit Court, Volusia County, Florida

and this Court's obligations are not delegable. The Court will review this matter on the merits should the Counter-Plaintiff file a subsequent motion.

It is ORDERED AND ADJUDGED that said Motion is hereby DENIED. The hearing set for April 23rd, 2018 is canceled.

DONE AND ORDERED in chambers, in Volusia County, Florida, on 05 day of April, 2018.

4/5/2018 1:53 PM 2014 31160 CICI

e-Signed 4/5/2018 1:53 PM 2014 31160 CICI

CIRCUIT JUDGE

Copies to:  All parties of record        CASE NO.:  2014 31160 CICI

DANIEL J WEBSTER PA
GARY  DOEHLA
GREENWAY LLC
G H M D LLC
DANIEL J WEBSTER PA
GARY  DOEHLA
DANIEL J WEBSTER PA

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court

Southern District of Florida

In re  Greenway, LLC

Case No.  17-23693-LMI

**Debtor**

Chapter  11

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐ FLAT FEE

For legal services, I have agreed to accept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

Prior to the filing of this statement I have received. . . . . . . . . . . . . . . . . . . . . . . $_____

Balance Due. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

☑ RETAINER

For legal services, I have agreed to accept a retainer of . . . . . . . . . . . . . . . . . . . $ 0.00

The undersigned shall bill against the retainer at an hourly rate of  . . . . . . . . . . $ 450.00

[Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved fees and expenses exceeding the amount of the retainer.

2. The source of the compensation paid to me was:

   ☐ Debtor        ☑ Other (specify)  Howard Doehla Revocable Trust

3. The source of compensation to be paid to me is:

   ☐ Debtor        ☑ Other (specify)  Gary Doehla, Howard Doehla Revocable Trust

4. ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a other person or persons who are not members or associates of my law firm. A copy of the Agreement, together with a list of the names of the people sharing the compensation is attached.

5. In return of the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

1. $25,000.00 WAS PAID AS A RETAINER FOR MULTIPLE MATTERS, OF WHICH THIS IS ONE. HOWEVER NO PORTION OF THE RETAINER PAID WAS SET ASIDE FOR THIS CASE.

Exhibit 4

B2030 (Form 2030) (12/15)

d.   [Other provisions as needed]
Review, analysis and generation of schedules and statements, attendance at 341 meeting of creditors and resolution of basic, typical calls and inquiries related to the filing of this case.

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following services:
2004 examinations and adversary proceedings.

## CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

10/26/2020

Date

/s/ David Merrill, 99155

*Signature of Attorney*

The Associates

*Name of law firm*
2401 PGA Boulevard
280M
Palm Beach Gardens, FL 33410
5618771111
dlm@theassociates.com

Instructions, Form 2030
12/15

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

**Instructions**

**Caption**

1.      Identify the Judicial District in which the bankruptcy case was filed.  Example: "Eastern District of California."

2.      "In re": Insert the name of the debtor as it appears in the bankruptcy petition.

3.      "Case No.": Insert the bankruptcy case number assigned by the court at the time of filing.

The instructions to the rest of the form are self-evident.

Be sure to cross out any services listed in question 5 which will not be provided.  Special care should be taken to complete questions 5(e) and 6 in detail, specifying services to be rendered and not to be rendered.

Additional sheets should be attached to the form as needed.  A copy of the retainer agreement, if any, should be attached to form.

**General Information for the Clerk**

This form should be filed by the attorney for the debtor in all bankruptcy cases, including involuntary cases, without regard to the chapter under which the case is proceeding.

Rule 2016(b) requires that the information requested in this form be filed with the court within 14 days after the order for relief is entered.  The clerk should seek direction from the chief bankruptcy judge in advance as to the proper procedure to be followed if the attorney for the debtor fails to file this form within the proper period.

Exhibit 5

# FLORIDA BAR ETHICS OPINION
## OPINION 06-1
### April 10, 2006

## Advisory ethics opinions are not binding

Lawyers may, but are not required to, store files electronically unless: a statute or rule requires retention of an original document, the original document is the property of the client, or destruction of a paper document adversely affects the client's interests. Files stored electronically must be readily reproducible and protected from inadvertent modification, degradation or destruction.

**RPC:** 4-1.5(f)(4), 4-1.6, 4-1.8(j), 4-7.7(h), 5-1.2(b)(3), 5-1.2(d)

**Opinions:** 63-3, 71-62, 81-8, 88-11 (Rec.), ABA Informal Ethics Opinion 1127 (1970), New York County Ethics Opinion 725 (1998), New York State Ethics Opinion 680 (1996), North Carolina Ethics Opinion RPC 234 (1996)

The Professional Ethics Committee has been directed by The Florida Bar Board of Governors to issue an opinion regarding electronic storage of law firm files. The bar has received many inquiries regarding electronic storage of law firm files in the wake of natural disasters, such as hurricanes. Some lawyers have asked whether they may store files exclusively electronically, without retaining a paper copy.

There are very few Rules Regulating The Florida Bar that address records retention. Rule 4-1.5(f)(4) requires that lawyers retain copies of executed contingent fee contracts and executed closing statements in contingent fee cases for 6 years after the execution of the closing statement in each contingent fee matter. Additionally, lawyers who are paid by insurance companies to represent insureds must retain a copy of the Statement of Insured Client's Rights that the lawyer has certified was sent to the client for 6 years after the matter is closed. Rule 4-1.8(j), Rules of Professional Conduct. Copies of advertisements and records of the dissemination location and dates must be retained for 3 years after their last use. Rule 4-7.7(h), Rules of Professional Conduct. Finally, trust accounting records must be retained for 6 years following the conclusion of the matter to which the records relate. Rule 5-1.2(d), Rules Regulating The Florida Bar.

The Rules Regulating The Florida Bar, with limited exception, do not specify the method by which records must be retained. As an example of an exception, Rule 5-1.2(b)(3) requires that lawyers retain original cancelled trust account checks, unless the financial institution they are drawn on will provide only copies. [Note: Rule 5-1.2(b)(3) has since been amended to allow either original cancelled checks or copies as long as they are legible and include all endorsements and tracking information.]

The committee has indicated in prior opinions that "the attorney must place primary emphasis on the desires of the client." Florida Ethics Opinion 81-8. The committee has further determined that lawyers should make diligent attempts to contact clients to determine their wishes regarding file retention before the lawyer destroys any closed files. Florida Ethics Opinions 63-3, 71-62, and 81-8. These opinions are silent as to the method of file retention.

Exhibit 6

Many opinions from other states address records retention issues and, more specifically, whether files may be stored electronically as opposed to paper copies.  These opinions, too numerous to cite, raise issues specific to electronic document retention that the committee finds worthy of mention.  The opinions generally conclude that, with appropriate safeguards, electronic document retention is permissible.  See, e.g., ABA Informal Ethics Opinion 1127 (1970) (Lawyers may use company that stores attorney files on computer as long as the material is available only to the particular attorney to whom the files belong, the company has procedures to ensure confidentiality, and the lawyer admonishes the company that confidentiality of the files must be preserved); New York County Ethics Opinion 725 (1998) (Permissible for a lawyer to retain only electronic copies of a file if "the evidentiary value of such documents will not be unduly impaired by the method of storage");  New York State Ethics Opinion 680 (1996) (Client's file may be stored electronically except documents that are required by the rules to be kept in original form, but lawyer should ensure that documents stored electronically cannot be inadvertently destroyed or altered, and that the records can be readily produced when necessary); and North Carolina Ethics Opinion RPC 234 (1996) (Closed client files may be stored electronically as long as the electronic documents can be converted to paper copies, except for "original documents with legal significance, such as wills, contracts, stock certificates").

This committee concludes that the main consideration in file storage is that the appropriate documents be maintained, not necessarily the method by which they are stored.  Therefore, a law firm may store files electronically unless: a statute or rule requires retention of an original document, the original document is the property of the client, or destruction of a paper document adversely affects the client's interests.

The committee agrees with other jurisdictions that have noted practical considerations involved in electronic file storage.  The committee cautions lawyers that electronic files must be readily reproducible and protected from inadvertent modification, degradation or destruction.  The lawyer may charge reasonable copying charges for producing copies of documents for clients as noted in Florida Ethics Opinion 88-11 Reconsideration.  Finally, lawyers must take reasonable precautions to ensure confidentiality of client information, particularly if the lawyer relies on third parties to convert and store paper documents to electronic records.  Rule 4-1.6, Rules of Professional Conduct.

The committee encourages the use of technology, such as electronic file storage, to facilitate cost-effective and efficient records management.  However, the committee is of the opinion that a lawyer is not required to store files electronically, although a lawyer may do so.